**[Cite as *State v. Yowpp*, 2020-Ohio-5215.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

Appellee

v.

Kron J. Yowpp

Appellant

Court of Appeals No. L-19-1176

Trial Court No. CR0201901181

**DECISION AND JUDGMENT**

Decided:  November 6, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Kron Yowpp, appeals the judgment of the Lucas County Court of Common Pleas, convicting him following a jury trial of one count of felonious assault in violation of R.C. 2903.11(A)(2) and (D), a felony of the second degree with an attached firearm specification in violation of R.C. 2941.145, and one count of improperly

discharging a firearm into a habitation in violation of R.C. 2923.161(A)(1) and (C), a felony of the second degree with an attached firearm specification in violation of R.C. 2941.145.  For the reasons that follow, we affirm.

## I.  Facts and Procedural Background

{¶ 2} The facts and testimony from the trial reveal that on December 21, 2018, Timothy Ciboro was hosting a Christmas party at his house on Boston Place in Toledo, Lucas County Ohio, when around 11:30 p.m. an unknown woman, K.C., ran into the home claiming that her boyfriend was chasing her with a gun.  K.C.'s hair was disheveled, she had a black eye, and she was wearing a short sleeve shirt and carrying her shoes in her hands.  Ciboro locked the door behind K.C.

{¶ 3} Within a minute, a male began knocking on the door and saying something that was not discernable.  No one at the party saw the person who was knocking.  The knocking lasted for about one minute.  Shortly thereafter, after the knocking stopped, multiple gunshots were fired from the vacant lot next door into the side of the house.  No one in the house saw the person firing the shots.

{¶ 4} When the police arrived a few moments later, K.C. reported that appellant had assaulted her and kept her against her will for the past couple of days.  She told the responding officers that she had just escaped from appellant's residence nearby, and that he was chasing after her.  K.C. stated that appellant must have seen her go into the house on Boston Place, and that he was the one who was knocking on the door and who fired shots into the house.  K.C., however, did not observe appellant fire the gunshots.

2.

{¶ 5} The police recovered multiple 9 mm shell casings in one location near the side of the house. The police also found one .45-caliber shell casing a little further away in the yard. Toledo Police Officer Michael Benninghoff testified that the 9 mm shell casings appeared to be "fresh" in that there was still a shine to the casings, while the .45-caliber shell casing appeared to have more dirt on it and looked to have been in the yard for a while.

{¶ 6} During the trial, several 911 calls about the shooting were played for the jury. In one of the calls, the caller describes that the police are on scene and have Boston Place blocked. The caller reported that after the police had blocked the street, he observed a gray Ford Taurus driving down the street, which he believed had been involved in a nearby shooting a week earlier.

{¶ 7} Following appellant's arrest, appellant made approximately 1,200 phone calls from jail to K.C. between January 23, 2019, and the trial. Three of those phone calls from June 2019 were played for the jury. In the calls, appellant encourages K.C. to talk to the prosecutor and tell the prosecutor that she does not want the video of her speaking with the police to be played at the trial. Appellant also encourages K.C. to talk to the prosecutor to try and get the case dismissed.

{¶ 8} In addition to the above evidence, the state introduced a typed letter that it received postmarked February 25, 2019, purportedly from K.C. Notably, the envelope was hand-addressed with K.C. as the return addressee, and the letter was printed with K.C.'s name, but it was not signed. The letter stated:

3.

To whom this may concern Hello I'm writing this letter to inform you that I will not be proceeding with the charges on Kron Yowpp. It was just a very big misunderstanding I didn't mean for all this to happen because the statement I told was not true. The day this took place yes I was intoxicated and mad at my boyfriend Kron Yowpp. I don't think its ok for him to be in jail committing a crime he did not do that night me and my boyfriend had a disagreement and I left he did not chase me .i told police he hit me with a gun but I did make that up again because I was angry no he did not fire a firearm at me or at nobody else home. I been living with him for the last past 2 years and never seen a firearm also that night it was a guy following me I went to Kron home that night got mad at him left his home and as I left it was a strange car following me but I know it was not Kron Yowpp because he was at home and he also has no vehicle My face was bruised because I got jumped by a group of girls so buy me being angry at him yes I did make the statement up and I will not be showing up to court sorry for the inconvenience (sic).

{¶ 9} K.C. was subpoenaed to testify for the state on the first two days of the trial, but the state did not call her as a witness. Appellant subpoenaed K.C. to appear on the second and third days of the trial. On the morning of the third day, counsel for appellant informed the court that K.C. was present, but that he made the decision not to call her as a witness and released her from the subpoena.

{¶ 10} Following the state's presentation of evidence, appellant moved for acquittal pursuant to Crim.R. 29, which the trial court denied.  Appellant then rested without calling any witnesses.

{¶ 11} Ultimately, the jury returned with a verdict of guilty on both counts.  At sentencing, the trial court ordered appellant to serve a total prison term of 14 years.

## II.  Assignments of Error

{¶ 12} Appellant has timely appealed his judgment of conviction, and now asserts two assignments of error for our review:

> 1.  The trial court abused its discretion when it denied appellant's motion for acquittal pursuant to Crim.R. 29, because the evidence presented was insufficient to support a conviction in this matter.

> 2. Appellant's convictions for felonious assault and domestic violence (sic) were against the manifest weight of the evidence.

## III.  Analysis

{¶ 13} In his first assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29 motion for acquittal, and that his convictions are based upon insufficient evidence.

{¶ 14} A Crim.R. 29 motion for acquittal is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.  *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.  In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a

5.

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 15} In this case, appellant does not challenge the elements of the crimes of felonious assault and improperly discharging a firearm into a habitation. Rather, appellant argues that there is no evidence that he was the person who committed the crimes. Appellant notes that there is no physical evidence linking him to the crime, such as ballistics, fingerprint, or DNA analysis. In addition, none of the partygoers at the house could identify appellant as the person who was knocking at the door, and none of them could even place appellant in the neighborhood around that time. Furthermore, there is no eyewitness testimony identifying appellant as the shooter. Finally, the one person that identified appellant, K.C., recanted her statements in the February 25, 2019 letter to the prosecutor. Thus, appellant concludes that his convictions are based upon insufficient evidence.

{¶ 16} We disagree. We find that the evidence, though circumstantial, is sufficient to support appellant's convictions when viewed in a light most favorable to the prosecution. *See State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991) ("[C]ircumstantial evidence can have the same probative value as direct evidence. * * * A conviction can be sustained based on circumstantial evidence alone." (Internal citations omitted.)).

6.

{¶ 17} Here, K.C. burst into Ciboro's home around 11:30 p.m. claiming that her boyfriend was chasing her with a gun. K.C.'s hair was disheveled, she had a black eye, and she was wearing a t-shirt and was barefoot on a cold night in the middle of December. Within a minute of K.C. entering the home, a person with a male voice began knocking on the door of Ciboro's residence. Moments after the knocking stopped, shots were fired into the residence. The abnormality of the events and their close proximity in time point to the conclusion that K.C.'s entrance to the home, the knocking on the door, and the shooting into the residence are all related. That is, the circumstantial evidence demonstrates that the person who was chasing K.C. is the same person that knocked on the door, and is the same person that fired shots into the home. K.C. identified this person as appellant. Therefore, we hold that a rational trier of fact could have found that appellant was the person who committed the crimes beyond a reasonable doubt, and appellant's convictions are not based upon insufficient evidence.

{¶ 18} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 19} In his second assignment of error, appellant argues that his convictions are against the manifest weight of the evidence, raising the same points that he made in support of his insufficiency argument.

{¶ 20} Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). A claim that a jury verdict is against the

7.

manifest weight of the evidence requires an appellate court to act as a "thirteenth juror." *Id.* at 387. In so doing, the appellate court,

> reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*Id.*

{¶ 21} Upon our review of the record, we find that this is not the exceptional case in which the evidence weighs heavily against the conviction. The critical piece of evidence in this case is K.C.'s statement to the police identifying appellant as the perpetrator. Weighing against the reliability of this evidence is K.C.'s recantation of her statement as described in the February 25, 2019 letter. In assessing the two conflicting statements, we find K.C.'s statements to the police to be more credible.

{¶ 22} First, K.C.'s statements to the police are consistent with her exclamation upon entering Ciboro's home that her boyfriend was chasing her with a gun. There is no indication in the record that K.C. had ever met Ciboro, and we can think of no reason why K.C. would lie to Ciboro about who was chasing her. The fact that it was her boyfriend chasing her with a gun, as opposed to someone else, would make it no more

8.

likely that Ciboro would provide sanctuary. Second, K.C.'s recantation is not believable. K.C. explains that she had left appellant's home when a strange car began following her. However, she did not describe that anyone jumped out of the car and began chasing her, nor did she describe why a person would do such a thing. More importantly, K.C.'s assertion that she was not being chased until after she left the home is belied by the fact that she had disheveled hair, a black eye, was not wearing her shoes, and was dressed in a t-shirt when she showed up at Ciboro's house at 11:30 p.m. on a cold night in the middle of December. Lastly, K.C.'s recantation—although no evidence exists to show that it was directed by appellant—is consistent with appellant's encouragement to tell the prosecutor not to use her recorded statements to the police at trial, and his encouragement to K.C. to try to have the charges dismissed. Thus, we find that K.C.'s statements to the police on the night of the incident weigh heavily in support of appellant's conviction.

{¶ 23} As a final matter, appellant argues that the 911 call reporting the gray Ford Taurus was evidence that appellant was not the shooter. However, the report concerning the Ford Taurus indicated that it was involved in a shooting the week earlier, and there was no indication that the two shootings were related. Additionally, the Ford Taurus was not seen until after the police had arrived and blocked the street, and there was no testimony that the shooter, or anyone else, was seen fleeing towards the car. Thus, we find that the 911 call concerning the Ford Taurus provides little, if any, support for the proposition that appellant was not the shooter.

9.

**{¶ 24}** Therefore, upon reviewing the record and weighing the evidence, we find that the jury did not clearly lose its way and create a manifest miscarriage of justice, and we hold that appellant's convictions are not against the manifest weight of the evidence.

**{¶ 25}** Accordingly, appellant's second assignment of error is not well-taken.

### IV. Conclusion

**{¶ 26}** For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                               JUDGE

Thomas J. Osowik, J.          

                                               _____
Christine E. Mayle, J.                           JUDGE
CONCUR.

                                               _____
                                               JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.